UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

**DENISE A. BAKER,**

        Plaintiff,                                          Case No. 6:12-cv-01859-ST

        v.                                                **FINDINGS AND RECOMMENDATION**

**CAROLYN W. COLVIN,**
Acting Commissioner of Social Security,

        Defendant.

**STEWART, Magistrate Judge:**

## INTRODUCTION

Plaintiff, Denise A. Baker ("Baker"), seeks judicial review of a final decision by the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 USC §§ 401–33.  This Court has jurisdiction pursuant to 42 USC § 405(g).  For the reasons set forth below, the Commissioner's decision should be affirmed.

1 – FINDINGS AND RECOMMENDATION

## ADMINISTRATIVE HISTORY

Baker protectively filed an application for DIB on January 30, 2004, alleging a disability onset date of August 1, 1999. Tr. 75–82.[1] After her application was denied both initially and on reconsideration, Baker requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 46–52. On February 16, 2007, a hearing was held before ALJ Jean Kingrey. Tr. 450–99, 740–805. Baker appeared and testified, along with her husband, James Baker, and a vocational expert ("VE"). *Id.* On April 26, 2007, ALJ Kingrey issued a decision finding Baker not disabled within the meaning of the Act. Tr. 35–44.

After the Appeals Council denied review of ALJ Kingrey's decision, Baker appealed to this court. *Baker v. Astrue*, No. 3:08-cv-01326-MO. Based on stipulation of the parties, the Honorable Michael W. Mosman remanded the case on October 14, 2009, for further administrative proceedings. Tr. 531–38. Upon remand, the ALJ was instructed to conduct a new hearing and further develop the record regarding Baker's mental impairments, obtain medical expert testimony qualified in psychiatry to clarify Baker's mental impairments, reassess Baker's residual functional capacity, and obtain supplemental testimony from a VE. Tr. 537–41.

On June 16, 2010, a remand hearing was held before ALJ Marilyn S. Mauer. Tr. 806–20. Baker appeared and testified, along with a medical expert, Ronald M. Klein, Ph.D. A VE was also present, but the ALJ found no additional VE testimony was required and relied on the testimony from the prior hearing. Tr. 517, 808, 819–20. On September 3, 2010, ALJ Mauer issued a decision finding Baker not disabled within the meaning of the Act. Tr. 517–29. On August 13, 2012, the Appeals Council denied Baker's request for review, making ALJ Mauer's

---

[1] Citations are to the page(s) indicated in the official transcript of the record (docket # 14) and the supplemental transcript of the record (docket # 16) filed on June 17, 2013.

decision the final decision of the Commissioner. Tr. 500–03. Baker now seeks judicial review of that decision.

## BACKGROUND

Baker was born in 1960. Tr. 75. She is a high school graduate with past relevant work experience in shipping and receiving, customer service, motel housekeeping, and as a detail manager of conversion of coaches. Tr. 104–11, 456. Baker has also taken classes at Lane Community College. Tr. 122–24. She alleges she became unable to work on August 1, 1999, due to degenerative disc disease, fibromyalgia, and high blood pressure. Tr. 83–84.

## DISABILITY ANALYSIS

In construing an initial disability determination, the Commissioner engages in a sequential process encompassing between one and five steps. 20 CFR § 404.1520; *Bowen v. Yuckert*, 482 US 137, 140 (1987).

At step one, the ALJ determines whether the claimant is performing substantial gainful activity. If so, the claimant is not disabled. 20 CFR § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant has "a severe medically determinable physical or mental impairment" that meets the 12-month durational requirement. 20 CFR § 404.1520(a)(4)(ii). Absent a severe impairment, the claimant is not disabled. *Id*. At step three, the ALJ determines whether the severe impairment meets or equals an impairment "listed" in the regulations. 20 CFR § 404.1520(a)(4)(iii); 20 CFR Pt. 404, Subpt P, App 1 ("Listing of Impairments"). If the impairment is determined to meet or equal a listed impairment, then the claimant is disabled. *Id*.

If adjudication proceeds beyond step three, the ALJ must first evaluate medical and other relevant evidence in assessing the claimant's residual functional capacity ("RFC"). The claimant's RFC is an assessment of work-related activities the claimant may still perform on a

regular and continuing basis, despite the limitations imposed by his or her impairments. 20 CFR § 404.1520(e); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).

At step four, the ALJ uses the RFC to determine whether the claimant can perform past relevant work. 20 CFR § 404.1520(a)(4)(iv). If the claimant cannot perform past relevant work, then, at step five, the ALJ must determine if the claimant can perform other work in the national economy. *Yuckert*, 482 US at 142; *Tackett v. Apfel*, 180 F3d 1094, 1099 (9th Cir 1999); 20 CFR § 404.1520(a)(4)(v).

The initial burden of establishing disability rests upon the claimant. *Tackett*, 180 F3d at 1098. If the process reaches step five, the burden shifts to the Commissioner to show that jobs exist in the national economy within the claimant's RFC. *Id*. If the Commissioner meets this burden, then the claimant is not disabled. 20 CFR § 404.1566.

## ALJ'S DECISION

At step one, the ALJ found Baker had not engaged in substantial gainful activity after the alleged onset date. Tr. 519–20. At step two, the ALJ found Baker suffers from the severe impairments of degenerative disc disease of the cervical spine, status post discectomy and fusion at C6-7 and microforaminotomies at left C4-6, paroxysmal supraventricular tachycardia, status post right knee arthroscopy with partial medial meniscectomy and lateral retinacular release, fibromyalgia, and bladder incontinence. Tr. 520–24. At step three, the ALJ found Baker's impairments, either singly or in combination, did not meet or equal the requirements of a listed impairment. Tr. 524.

Because Baker did not establish disability at step three, the ALJ continued to evaluate how her impairments affected her ability to work. The ALJ concluded Baker had the RFC to

> perform light work . . . with lifting and carrying of 20 pounds occasionally and 10 pounds frequently and pushing unlimited, other than as shown for lifting and

carrying. She is to never climb ladders, ropes and scaffolds. Ms. Baker requires the opportunity to change between sitting, standing and walking positions and to have limited turning of the head and neck to the left or back and forth. Due to medications she is to have no exposure to hazardous environments and no complex tasks. Ms. Baker is to have access to a nearby restroom.

*Id*.

At step four, the ALJ found Baker could not perform any of her past relevant work. Tr. 527. At step five, based on the VE testimony, the ALJ determined Baker could perform jobs that exist in significant numbers in the national economy, including touch up screener and office helper. Tr. 528–29. The ALJ therefore concluded Baker is not disabled as defined by the Act. *Id.*

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 USC § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F3d 1190, 1193 (9th Cir 2004). The court must weigh the evidence that supports and detracts from the ALJ's conclusion. *Lingenfelter v. Astrue*, 504 F3d 1028, 1035 (9th Cir 2007), citing *Reddick v. Chater*, 157 F3d 715, 720 (9th Cir 1998). The reviewing court may not substitute its judgment for that of the Commissioner. *Id*, citing *Robbins v. Soc. Sec. Admin.*, 466 F3d 880, 882 (9th Cir 2006); *see also Edlund v. Massanari*, 253 F3d 1152, 1156 (9th Cir 2001) (citations omitted). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading. *Lingenfelter*, 504 F3d at 1035; *Batson*, 359 F3d at 1193.

## FINDINGS

Baker asserts that on remand the ALJ erred by: (1) failing to include all of her limitations in the RFC; and (2) failing to pose a complete and proper hypothetical to the VE.

5 – FINDINGS AND RECOMMENDATION

I.      **RFC Assessment**

Baker first argues that the RFC did not account for all limitations created by her bladder incontinence and inability to move her head or neck.

The RFC is the most a claimant can do despite her limitations. 20 CFR § 404.1545(a)(1). The ALJ must reach the RFC assessment based on all the relevant evidence in the record, including medical records and the effects of symptoms that are reasonably attributed to a medically determinable impairment. *See Robbins*, 466 F3d at 883; SSR 96–8p, 1996 WL 374184. The RFC must incorporate limitations found in the record. *See Osenbrock v. Apfel*, 240 F3d 1157, 1164–65 (9th Cir 2001).

A.      **Bladder Incontinence**

The ALJ found Baker's bladder incontinence to be a severe impairment and afforded a workplace limitation that allowed her access to a nearby restroom. Tr. 524, 527. However, Baker argues that her bladder incontinence imposes greater workplace restrictions.

Baker testified at the first hearing that she suffers from bladder leakage, requiring her to wear three Poise pads, carry around extra pads with her, and change them three times a day. Tr. 480–82, 779–82. She also testified that she carries around an extra pair of pants and changes them once per day. *Id.* The medical evidence shows she was prescribed Ditropan for her bladder incontinence, but she never took it because it was not covered by her insurance. Tr. 369–70, 373.

Baker argues simple restroom access is inadequate to address the problems presented by her bladder incontinence. Specifically, no consideration was given to how much time would be required to address each leakage problem or how much time would be lost from work. The record does not establish however, that Baker requires any extended period of time in the

restroom.  She testified only that she needs to change her pads three times per day and her pants once per day.

Further, she was prescribed medication for her bladder incontinence, but never took it due to a lack of insurance.  "Impairments that can be controlled effectively with medication are not disabling. . ." *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F3d 1001, 1006 (9th Cir 2006) (citations omitted).  However, "benefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford."  *Id* (citations omitted);  SSR 82-59.  Here the ALJ failed to develop the record to determine whether financial reasons explained Baker's failure to afford necessary treatment.  *See Lee v.* Barnhart, 117 Fed Appx 674, 681 (10th Cir 2004).  Yet even in the absence of prescription medication, the record contains no evidence that Baker requires anything more than access to a restroom while working to account for her bladder incontinence.  As such, the RFC properly accounted for her bladder incontinence.

### B.  Head and Neck Movement

Baker also argues that while the RFC limits turning of her head and neck to the left or back and forth, the ALJ failed to indicate whether this was a continuous problem, whether Baker could not move her head or neck in these directions entirely, or the amount of time she was restricted from performing these activities.

Baker testified at the first hearing about her neck, shoulder, and arm pain with hand numbness, as a result of an auto accident in November 1999.  Tr. 457, 749–50.  In May 2000, Baker underwent discectomy, fusion, and microforaminotomies, performed by Catherine Gallo, M.D. Tr. 150–52.  Follow up appointments indicated no acute distress, no pinpoint tenderness on the cervical spine, bilateral spasms, but strength and sensation intact in the upper extremities.  Tr. 144, 149.  The following month x-rays showed excellent interbody fusion and alignment at

C6-7. Tr. 144. Later examination by John M. Holtzapple, M.D., revealed markedly reduced extension of her neck and also decreased leftward rotation and left sided bending when compared to the right, but full active range of motion of her upper extremities. Tr. 351. Thereafter, treating sources consistently found her upper extremities to have full active range of motion and limited but full range of motion in her head and neck. Tr. 201, 251, 262–63, 269, 335.

In August 2000, Dr. Gallo told Baker she was capable of performing light duty work and released her to work with no lifting, pushing, or pulling in excess of 20 pounds. Tr. 143–44. In April 2001, Dr. Holtzapple wrote a set of work restrictions requesting Baker's employer to arrange her work space to minimize turning of the head and neck to the left or back and forth, provide a telephone headset rather than a handheld receiver, and allow a stretch break once an hour. Tr. 349–50.

In formulating the RFC, the ALJ gave significant weight to the opinions of Drs. Gallo and Holtzapple and incorporated their recommended limitations.[2] Tr. 526. The ALJ also considered the assessment of a state agency non-examining medical consultant, Linda Jensen, M.D., who found Baker has the capacity for a full range of light work. *Id*, citing Tr. 276–84. However, the ALJ found Dr. Gallo, who operated on Baker's cervical spine, and Dr. Holtzpple, who treated and evaluated Baker over a long period of time, in a better position to accurately assess Baker's physical capacities and limitations. *Id*. In sum, the RFC accurately incorporates the workplace limitations recommended by treating physicians Drs. Gallo and Holtzapple.

The ALJ considered Baker's testimony about her neck, shoulder, and arm pain with hand numbness, as well as a her report of experiencing pain 24 hours a day. Tr. 525 (Tr. 90–92, 450–99.) However, the ALJ found these statements not credible. *Id*. The ALJ noted that Baker

---

[2] Pursuant to the remand order, the ALJ reevaluated Dr. Holtzapple's treatment notes and found that they fail to support additional limitations and present no contradictory opinion. Tr. 526.

reported getting substantial help from her husband for housework and cooking, yet she had been able to attend community college classes and worked as a housekeeper for at least one year, which spanned before and after the neck surgery. *Id*, citing Tr. 102, 214. Inconsistencies between a claimant's reported symptoms and activities of daily living are a valid basis for rejecting a claimant's complaints. *See Fair v. Bowen*, 885 F2d 597, 603 (9th Cir 1989).

In sum, the ALJ properly formulated Baker's RFC based on the limitations identified by her treating physicians and properly discounted her testimony regarding the intensity of her pain.

## II.     VE Testimony

Baker argues that because the ALJ failed to account for all of the limitations created by her bladder incontinence and head movement in the RFC, the hypothetical the ALJ posed to the VE was not based on all of her limitations and thus, has no evidentiary value to support the ALJ's findings.

At step five, the Commissioner must consider whether the claimant is able to perform other work in the national economy in view of his age, education, and work experience. *Yuckert*, 482 US at 142. In making that determination, the ALJ may elicit testimony from a VE, but "the hypothetical [posed to the VE] must consider all of the claimant's limitations." *Light v. Soc. Sec. Admin.*, 119 F3d 789, 793 (9th Cir 1997), quoting *Andrews v. Shalala*, 53 F3d 1035, 1044 (9th Cir 1995). If a VE's hypothetical does not reflect all of the claimant's limitations, then the "expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Delorme v. Sullivan*, 924 F2d 841, 850 (9th Cir 1991) (citations omitted).

As discussed above, the ALJ provided sufficient support for her RFC assessment. The ALJ's hypothetical questions included all of the limitations that the ALJ found were credible and

9 – FINDINGS AND RECOMMENDATION

supported by substantial evidence in the record, including access to a restroom and limited turning of the head and neck to the left or back and forth. Tr. 492–93, 495–96. Under these circumstances, the VE's testimony had evidentiary value, and the ALJ was entitled to rely upon that testimony in reaching a disability determination.

## RECOMMENDATION

For the reasons discussed above, the Commissioner's decision should be affirmed.

## SCHEDULING ORDER

The Findings and Recommendations will be referred to a district judge. Objections, if any, are due by March 27, 2015. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this 10th day of March, 2014.

s/ Janice M. Stewart<br>
Janice M. Stewart<br>
United States Magistrate Judge